UNITED STATES of America,
Plaintiff-Appellee,

v.

Roger Daniel HARTMAN,
Defendant-Appellant.

No. 79–5126.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1979.

Decided Aug. 1, 1980.

**8**

Roger Jon Diamond, Pacific Palisades, Cal. (court appointed), for defendant-appellant.

W. J. Michael Cody, U. S. Atty., Devon L. Gosnell, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before MERRITT, KENNEDY and JONES, Circuit Judges.

PER CURIAM.

Hartman appeals from his jury conviction for conspiracy to distribute methamphetamine and for aiding and abetting the possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1976). He argues that: (1) the evidence was insufficient to support the verdict; (2) the District Court erred in instructing the jury with respect to accomplice testimony; (3) the District Court erred in denying a motion for suppression of evidence; and (4) the District Court erred in combining the conspiracy instruction with the instruction on aiding and abetting. For the reason set forth below, we reverse the judgment entered upon the conviction and remand the case for a new trial.

Hartman's conviction grew out of the undercover work of narcotics agent Mehr. On August 11, 16, and 23, 1978, Mehr purchased from one Carter in Memphis a total of approximately five ounces of methamphetamine (sometimes called "speed") for $10,-000. In an effort to determine and apprehend the person who was supplying Carter with the narcotics, Mehr offered to purchase an additional pound of speed. Carter advised he could obtain this amount and September 14, 1978, was set up as the date for delivery. On that date, Carter informed Mehr that his supplier was in town staying at the Airways Travel Lodge. Carter agreed to and did bring the narcotics later that day to Mehr's motel room. He advised Mehr that his source had two more pounds of narcotics in a lock box. Carter was then arrested and interrogated. He told Mehr that he had come to the motel with the defendant Hartman, who at that time was standing in the parking lot of the motel near his automobile. Based on Carter's statement that he had come to the motel with Hartman in the automobile, the officers arrested Hartman and seized the automobile for purposes of forfeiture under a Tennessee statute providing for forfeiture of vehicles used in narcotics traffic.

The officers searched Hartman's automobile. They found two suitcases that Hartman said belonged to him. One of the suitcases contained a quantity of "speed." In the automobile, the agents also found a large ring of keys which had on it the automobile ignition key and a safety deposit box key. Subsequent investigation showed that the safety deposit box which matched the key contained a large quantity of methamphetamine and that Hartman had registered in the Airways Travel Lodge but under a false name.

Hartman's defense was that he had driven another person to Memphis, one Payne, that the two of them had checked into the Airways Travel Lodge and that unknown to Hartman at the time was the fact that Payne was the source and supplier of the narcotics. Hartman testified that the two suitcases were not his and that he did not know that Payne had put narcotics in his suitcase.

Hartman's defense does provide an innocent explanation of the facts. Payne did accompany Hartman to Memphis, and they did check into the motel together. Both

Carter and Payne testified in support of Hartman's version of the facts. Payne said that Hartman was an innocent bystander.

■ A rational jury nonetheless could find beyond a reasonable doubt that Hartman's innocent explanation was false. Hartman's presence at the scene coupled with his false registration at the motel, his conflicting statements to officers concerning his purpose for being in Memphis, and the presence of a key to the safety deposit box containing the methamphetamine on the same key ring with the automobile ignition key provide substantial evidence of Hartman's participation. It thus would not be impossible for a rational jury to convict Hartman on the basis of these facts.

■ Hartman also complains that the District Judge implied and allowed the jury to find that Payne, whose testimony supported Hartman, was an accomplice and that an accomplice's testimony should be "received with caution and weighed with great care." Hartman did not object to the instruction during trial. He now argues, though, that the instruction was erroneous because there is no reason for suspicion or caution concerning accomplice testimony given on behalf of a defendant for, in the words of Professor Wigmore, "The essential element . . . is this supposed . . . expectation of conditional clemency. If that is lacking, the whole basis for distrust fails." 7 Wigmore, Evidence § 2057 (3d Ed. 1940). Where the accomplice is the defendant's witness, Hartman contends that such an instruction is misleading. We think that even if the instruction were error, the defendant's failure to object effectively waives the error. The instruction, even if error, was not so harmful as to constitute "plain error" or affect the substantial rights of the defendant. Moreover, there is reason to distrust such testimony given on behalf of a defendant. Such a witness may want to save his friend or prevent disclosure of further details that would more seriously incriminate them both. See *United States v. Stulga*, 584 F.2d 142 (6th Cir. 1978); *United States v. Urdiales*, 523 F.2d 1245 (5th Cir. 1975).

■ We do not read the District Court's charge as permitting the jury to find the defendant guilty of aiding and abetting a conspiracy. The instruction on aiding and abetting only allowed the jury to find that the defendant could be convicted as a principle on the substantive counts if he aided and abetted their commission. The instruction is not confusing and does not lead the jury in any way to believe that it could convict the defendant of conspiracy upon finding the defendant to be an aider and abetter.

■ Nor was admission of the key ring into evidence erroneous. In *United States v. Shye*, 473 F.2d 1061 (6th Cir. 1973), our Court recognized that the seizure and subsequent search of an automobile which law enforcement officers have probable cause to believe had been used for the transportation of contraband and thus is subject to forfeiture, is proper. *Accord: United States v. Johnson*, 572 F.2d 227 (9th Cir. 1978); *United States v. Panebianco*, 543 F.2d 447 (2d Cir. 1976); *United States v. Edge*, 444 F.2d 1372 (7th Cir. 1971); *United States v. Stout*, 434 F.2d 1264 (10th Cir. 1970). The key ring was a product of a valid search and, therefore, properly admitted to the jury's consideration.

■ It was error, however, to admit into evidence the quantity of methamphetamine found in a suitcase that contained numerous personal articles belonging to Hartman. Agents found the suitcase in the car that Hartman was driving. They had not procured a warrant to search the suitcase. Nor, apparently, did any exigent circumstances require an immediate inspection. "Unlike an automobile, whose primary function is transportation," and the search of which often does not require a warrant, said the Supreme Court in *U. S. v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977), "luggage is intended as a repository of personal effects. In sum," the Court observed, "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." Thus the Court held that issuance of

a warrant was a necessary prerequisite to admission of evidence found in luggage seized for probable cause in the absence of exigent circumstances.[1] Because the agents had not obtained a search warrant, and because there evidently were no exigent circumstances to justify a warrantless search in the present case, the methamphetamine found in the luggage was not properly admissible.

■ We are unable to say, without a reasonable doubt, that the jury would have convicted Hartman without the introduction of the suitcase methamphetamine. The items of evidence that most strongly tied Hartman to the drug conspiracy were the methamphetamine found in his suitcase, the drugs found in the safety deposit box to which the police were led by the keyring in Hartman's car, and Hartman's presence in the motel parking lot. Hartman had an innocent explanation of the keyring and of his presence at the scene. The suitcase methamphetamine may well have convinced at least some jurors.

Accordingly, we reverse the judgment entered upon the conviction and remand the case for a new trial.

JONES, Circuit Judge, dissenting in part.

I agree with the majority that the decision in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) requires us to suppress the contents of the suitcase seized in defendant's automobile. However, because I believe the evidence is insufficient to support the jury's guilty verdict, I respectfully dissent from the opinion of the Court.

### I.

A more complete recital of the government's proof of each of the coconspirators' "involvement" in the alleged conspiracy to distribute narcotics than is set forth in the opinion above is necessary to illustrate my conclusion that the prosecution failed to prove Hartman's participation in such a conspiracy.

Tennessee agent Mehr made several purchases of methamphetamine from Ronald Carter over several months. Mehr had contact with only Carter and Michael Montgomery on these sales.

On September 14, 1978, Mehr went to Carter's business, High Adventure Sports, in Memphis to purchase a large amount of methamphetamine. Carter indicated that his suppliers were in town, and that he could obtain several pounds of the drug, but that he needed cash upfront. They arranged for Montgomery to obtain two ounces. Montgomery drove off and returned with two ounces, and Mehr paid $4,000. They agreed to meet an hour later at Mehr's hotel room to complete the sale of another pound.

Carter produced the methamphetamine in Mehr's car outside the hotel. He was arrested immediately and taken to Mehr's room. Another agent, Houston, apprehended and arrested Montgomery and Dennis Payne in a red Gremlin parked nearby. Payne was attempting to dispose of $4,000 in cash at the time of arrest. Payne was also carrying a safe deposit box key and motel key. A later search discovered 20 ounces of methamphetamine in the safe deposit box rented by Payne in his name only.

A few minutes after the arrest of Payne and Montgomery, Agent Ruhl approached defendant Hartman, who was standing by his green Volvo stationwagon looking in the other direction from the arrest. Upon questioning, Hartman said that he had dropped off a friend and was waiting for him to return. Ruhl took Hartman's driver's license to Mehr's room and showed it to Carter. Ruhl testified that Carter identified Hartman as the person who drove him to the hotel. (Carter did not testify before the jury at trial. He did testify to the Court, out of presence of jury, that he was driven to the hotel by Montgomery, that he

---

1. The Court made clear in *Arkansas v. Sanders*, 442 U.S. 753, 763–65, 99 S.Ct. 2586, 2592–94, 61 L.Ed.2d 235 (1979), that the *Chadwick* warrant requirement applies to luggage found in seized automobiles.

barely knew Hartman, that he did not identify Hartman to Ruhl and that Hartman played no part in the drug sale). Ruhl then brought Hartman, who went voluntarily, to a motel room adjoining that of Mehr and, according to Ruhl, Carter again identified Hartman. Hartman was placed under arrest.

While Ruhl took Hartman to the motel room, Agent Griggs searched Hartman's car. On the seat of the car he found a set of keys which contained a safe deposit key matching the one found on Payne. Griggs also took an accountant's work pad that was in view in a side flap of a suitcase. The pad contained notes on various chemicals related to methamphetamine, amounts and prices of the drug, and a three-way division of the sales price. Significantly, Payne's fingerprints were on the pad, while Hartman's were not. Two suitcases in the car were also searched and discovered to contain a small amount of methamphetamine and some marijuana.

## II.

It is well established that the jury's verdict on Hartman must be sustained if supported by substantial evidence, drawing all reasonable inferences most favorable to the Government. *United States v. Glasser*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In my view the record is devoid of any evidence from which Hartman's participation in a conspiracy may be reasonably inferred.

An examination of the testimony of prosecution witnesses, including government agents, demonstrates the following:

—No one saw Hartman arrive at the hotel.

—Payne and Montgomery were arrested together in the red Gremlin while Payne was attempting to get rid of $4000 in cash.

—Hartman was standing alone not near the other defendants at the time of arrest.

—Hartman said he was waiting for Payne.

—Hartman said that the suitcases in the car belonged to him, but that he had loaned one to Payne for Payne's use.

—The set of keys taken from Hartman's car was lying on the front seat.

—Only Payne went to the bank to rent the safe deposit box and only his name was listed as rentor.

—The accountant's pad contained Payne's fingerprints only and not Hartman's.

—The division of the sales proceeds on the work pad was three-way and did not include Hartman.

—Ruhl was the only witness to testify that Carter identified Hartman.

—Hartman had stopped at High Adventure Sports that morning.

—At the time of his arrest, Hartman disclaimed recognizing Payne and Montgomery.

These facts preclude a finding of guilt beyond a reasonable doubt. All the evidence is consistent with Hartman's alibi. Hartman's testimony is totally confirmed by Payne. There is no evidence establishing Hartman's knowledge of the safe deposit key on the set of keys, the work pad, or the drugs found in the one suitcase. There is no evidence that he knew of Payne's criminal activities.

The defendant's conviction seems based on presence near, not knowledge of, the drug transaction. What Hartman should have suspected is different from the agreement or participation necessary to establish a conspiracy. There is absolutely no proof to establish Hartman as a beneficiary of the conspiracy, nor did the record show any overt acts by him in furtherance thereof. See *United States v. Johnson*, 513 F.2d 819, 823–24 (2nd Cir. 1975). Indeed, the absence of Hartman's name on the sales proceeds split demonstrates his non-involvement.

Consequently, because the evidence is insufficient to support the jury's verdict, I would vacate the judgment and remand the case to the district court for entry of a judgment of acquittal.