UNITED STATES of America,
Plaintiff-Appellee,

v.

Derrell Darnell HAMILTON,
Defendant-Appellant.

No. 81–1321.

United States Court of Appeals,
Sixth Circuit.

Argued April 20, 1982.

Decided Aug. 2, 1982.

Certiorari Denied Nov. 1, 1982.
See 103 S.Ct. 312.

Thomas V. Wilhelm, Deputy Federal Defender, Kenneth R. Sasse, Detroit, Mich., for defendant-appellant.

Richard A. Rossman, U. S. Atty., Sheldon N. Light, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before CONTIE, Circuit Judge, and CELEBREZZE and BROWN, Senior Circuit Judges.

CONTIE, Circuit Judge.

Derrell Darnell Hamilton appeals from his convictions for uttering altered obligations of the United States in violation of 18 U.S.C. § 472. Three counts were brought against Hamilton. Count One alleged that he uttered an altered obligation in a fast food restaurant on May 27, 1980. Count Two alleged that he aided and abetted an unknown person in passing an altered obligation on the same date at the same location. Count Three alleged that Hamilton uttered an altered obligation at a gas station on June 5, 1980. Hamilton denied being at either location on the dates in question, and raised an alibi defense as to Counts One and Two. After a trial by jury, Hamilton was found guilty of Counts One and Three and not guilty of Count Two.

Hamilton raises four issues on appeal. He claims that the district court erred: (1) in not suppressing identification evidence; (2) in not granting his motion for a separate trial on Count Three; (3) in admitting evidence of a prior similar act of passing an altered obligation; and (4) in not giving a requested alibi instruction as to Counts One and Two. We find no merit in Hamilton's first three claims. We do find, however, that the district court committed reversible error in not giving the requested alibi instruction. Accordingly, we affirm Hamilton's conviction on Count Three and reverse and remand for a new trial his conviction on Count One.

## FACTS

On the afternoon of May 27, 1980, two men entered Church's Fried Chicken Restaurant and approached the counter to place their orders. The cashier, Antonio Tramble, had just opened his register and the two men were his first customers on that day. The first man placed his order and paid with what appeared to be a $20 bill while the second man talked to Tramble. The second man then placed his order and also paid with what appeared to be a $20 bill. Tramble examined the second bill

because he felt that the second man had been trying to distract him by talking to him. Upon examination, Tramble saw that the second man had handed him a $1 bill with the corners of a $20 bill pasted on it. The second man took the bill back, saying that he had won it in a crap game and that he would kill the man who gave it to him.

After both men left the restaurant, Tramble examined the bill the first man had given him and discovered that it had been similarly altered. Tramble ran out of the restaurant in time to see the two men driving away in a green Monte Carlo. He wrote the license number on the wall and then called the police. The police established that the reported license number had been issued to Hamilton. It was also established that Hamilton drove a green Monte Carlo.

On June 7, Tramble was shown a photo array of seven pictures and asked if he recognized either of the men involved in the May 27 incident. Of the seven pictures in the array, three were of Hamilton. The detective who prepared the array testified that he put in three pictures of Hamilton because the pictures showed him with different hairstyles and different facial hair. Tramble looked at the pictures and immediately identified Hamilton as being the second of the two men who passed him the altered bills.

The second crime, upon which Count Three was based, occurred at a gas station on June 5, 1980. At noon, two men drove a green Monte Carlo into the station. While Daniel Muszynski pumped gas for the two men, his co-worker Thomas Melton pumped gas across the island. Muszynski spilled some gas on the car, prompting the driver to get out of the car to complain. After some discussion about the spilled gas, Muszynski accepted what appeared to be a $50 bill in payment from the driver of the green car. As the car drove away, Muszynski discovered that he had been given a $2 bill with the corners of a $50 bill attached. On June 9, Melton and Muszynski were shown the same photo array previously shown to Tramble. Melton identified the same pho-

tograph originally picked by Tramble as being the driver of the car. Muszynski could not identify any of the photographs.

Prior to trial, Hamilton moved for a separate trial on Count Three. He also moved to suppress the identification evidence. Both motions were denied following hearings. At the suppression hearing, Muszynski identified Hamilton as being the driver of the green car, despite his previous inability to pick out Hamilton in the photo array.

At trial, all three witnesses identified Hamilton. In addition to the identifications, the government introduced evidence that Hamilton had uttered an altered obligation in January 1979, and had been convicted in state court. On that occasion, Hamilton had passed a $2 bill with the corners of a $20 bill attached. The district court admitted the prior act evidence over Hamilton's objection. At the government's request, the district court gave a limiting instruction to the jury, advising it that the evidence could not be considered to show criminal propensity. The limiting instruction was repeated in the final charge to the jury.

Hamilton denied being in the restaurant on May 27 or at the gas station on June 5. He presented an alibi defense as to Counts One and Two, contending that he had been at a picnic on May 27. Three witnesses, all friends of Hamilton, corroborated his story. Hamilton also testified that he discovered his front license plate missing on May 27 and did not drive his car on that date. He obtained new plates on May 28.

At the close of the trial, the district court charged the jury, but failed to give a requested alibi instruction. Hamilton's counsel did not specifically object to this omission but had been granted a standing objection to any requested charges that the district court failed to give.

## IDENTIFICATION EVIDENCE

Hamilton contends that the identifications made by Tramble, Melton, and Muszynski all violated due process. He asserts that the use of the photo array creat-

ed a substantial likelihood of misidentification. Initially, we note that Muszynski's in-court identification presents no problem since he did not identify Hamilton from the photo array. Muszynski's inability to pick Hamilton out of the photo array did not render his in-court identification invalid. *United States v. Dobson*, 512 F.2d 615 (6th Cir. 1975). The weight to be given to his identification was a jury question. *Id.* at 616.

■ Since Tramble and Melton did initially identify Hamilton from the photo array, we must determine if the use of the array violated due process. There is little doubt that a photo array in which the defendant appears in three out of seven pictures is somewhat suggestive.[1] Suggestiveness of the identification procedure, however, does not merit suppression by itself. The proper standard is whether, under the totality of the circumstances, there was an impermissibly suggestive identification procedure used which caused a very substantial likelihood of irreparable misidentification. *Robinson v. Smith*, 624 F.2d 54 (6th Cir. 1980). The central focus is on the reliability of the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Reliability is tested by considering the following factors: (1) the opportunity of the witnesses to view the criminal; (2) the witnesses' degree of attention; (3) the accuracy of the witnesses' prior descriptions; (4) the witnesses' level of certainty; and (5) the length of time between the first view of the criminal and the subsequent identification. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

The district court applied the proper standard and found that the identifications made by Tramble and Melton were suffi-

ciently reliable to present an issue for the jury. We find that the district court's findings are not clearly erroneous.

■ Both Tramble and Melton had excellent opportunities to view the criminal. Tramble waited on him in a well-lit restaurant and spoke with him. Melton did not speak with the criminal but he had a prolonged opportunity to view him in daylight. Tramble could also be expected to have paid more attention to the criminal than he would have to the usual customer. Tramble testified that he paid more attention to him because of his discussion with him since Tramble usually did not engage in long conversations with customers. His attention was further focused when he confronted the customer with the altered bill and the latter said that he would kill the man who gave it to him.

Tramble and Melton both gave general descriptions of the criminal and the car. Tramble also got the license number, which is strong corroborating evidence.. Both Tramble and Melton displayed a high level of certainty in making their identifications. Neither was the time between the crimes and the identification so long as to warrant exclusion. Tramble viewed the photo array approximately eleven days after the crime and Melton viewed it within four days. *See United States v. Barron*, 575 F.2d 752 (9th Cir. 1978) (admissible despite two month lapse between crime and identification).

Under the totality of the circumstances, we find no due process violation in admitting the identification evidence.

## SEVERANCE

■ Prior to trial, Hamilton moved to sever Count Three from Counts One and Two, contending that a single trial of the two incidents would have a prejudicial ef-

---

1. The identification procedure used in this case was arguably less suggestive than other procedures which have been held not to violate due process under the totality of the circumstances. *See e.g. Summit v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) (a one-on-one showup), or *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2234, 53 L.Ed.2d 140 (1977) (showing of a single photo). Furthermore, it should be noted that the three pictures of the defendant were not identical; they depicted him with different hairstyles and facial hair. The fact that Tramble and Melton picked the same picture further indicates that the array may not have been as suggestive as the defendant contends.

fect. The first step in our analysis is to determine whether the charges were properly joined in the first instance under Rule 8(a) of the Federal Rules of Criminal Procedure. We find that the offenses were properly joined because they were of the same character. Since the offenses were properly joined in the first instance, the denial of severance under Rule 14 of the Federal Rules of Criminal Procedure can only be overturned upon a finding of abuse of discretion. *United States v. Harris*, 635 F.2d 526 (6th Cir. 1980), *cert. denied* 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 847 (1981).

■ We find no abuse of discretion. The evidence of each crime would have been admissible in the trial of the other crime to prove intent or identity. *Fed.R.Evid.* 404(b).[2] Since such evidence would have been admissible in separate trials, there was no prejudice in consolidating the two charges in one trial. *United States v. Nickerson*, 606 F.2d 156, 159–60 (6th Cir.), *cert. denied* 444 U.S. 994, 100 S.Ct. 528, 62 L.Ed.2d 424 (1979); *United States v. Burkley*, 591 F.2d 903, 920–21 (D.C.Cir.1978), *cert. denied* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979).

## PRIOR ACT EVIDENCE

■ Hamilton also contends that the district court erred in admitting evidence that he had uttered an altered obligation a year before the incidents involved in this case. The evidence was presented to the jury in the form of a stipulation to the effect that Hamilton had passed a $2 bill altered to look like a $20 bill. The evidence was admitted pursuant to Rule 404(b) of the Federal Rules of Evidence. To be admissible, "this evidence must be substantially similar and near in time to the offense charged, must be in issue, and must have more probative value than prejudicial impact." *United States v. Largent*, 545 F.2d 1039, 1043 (6th Cir. 1976), *cert. denied* 429 U.S.

1098, 97 S.Ct. 1117, 51 L.Ed.2d 246 (1977), citing *United States v. Ring*, 513 F.2d 1001, 1004 (6th Cir. 1975). We recognize that the district court has broad discretion in admitting evidence under Rule 404(b), and that we may only reverse upon a finding of abuse of that discretion. *United States v. Czarnecki*, 552 F.2d 698, 702 (6th Cir.), *cert. denied* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).

■ We find that the evidence of the prior act was properly admitted to show intent and identity. Hamilton contends that intent was not "in issue" because he had not actively contested intent. We disagree. 18 U.S.C. § 472 requires the government to prove that the defendant passed the altered bills with the intent to defraud and the defendant in this case did not concede the issue of intent in any way. "Faced with a plea of not guilty, the prosecution is under no obligation to wait and see whether the defendant argues the non-existence of an element of crime before the prosecution presents evidence establishing that element." *United States v. Buchanan*, 633 F.2d 423, 426 (5th Cir. 1980), *cert. denied* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 301 (1981). *See also United States v. Reed*, 647 F.2d 678, 686 (6th Cir.), *cert. denied* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981); *United States v. Weidman*, 572 F.2d 1199 (7th Cir.), *cert. denied* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Indeed, the government has an affirmative burden to prove every element of the crime beyond a reasonable doubt.

Even accepting Hamilton's argument that intent was not in issue, the district court could have properly admitted the evidence to prove identity. To be admissible, the crimes must be so similar as to be a "signature" of the defendant (a device so unusual or distinctive as to be like a signature). *United States v. Woods*, 613 F.2d

---

**2.** Rule 404(b) of the Federal Rules of Evidence provides:

 (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

629 (6th Cir.), *cert. denied* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980); *United States v. Phillips*, 599 F.2d 134 (6th Cir. 1979). It is not necessary, however, that the crimes be identical in every detail. *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir. 1977), *cert. denied* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

In comparing the 1979 crime to the two crimes charged in this case, we find that the district court did not abuse its discretion in admitting the evidence. The *modus operandi* was sufficiently unique and the crimes sufficiently similar so as to make the evidence admissible to show identity.

Hamilton also contends that the district court's limiting instruction on the prior act evidence was erroneous. We find no merit in this argument. The district court gave a limiting instruction to the jury at the time the evidence was admitted and at the close of the trial. Hamilton did not object at either time. Viewed in their totality, we find no error in the instructions on prior act evidence.

## ALIBI INSTRUCTION

Hamilton's final claim on appeal is that the district court erred in not giving a requested alibi instruction.[3] Prior to charging the jury, the district court notified counsel for both sides that they would have a standing objection to any requested instructions which were not given. After the court charged the jury, counsel for both sides were asked if they had any objections to the charge or further requests. Counsel for the defendant confirmed that he had a standing objection to any requested charge not given and made no further objection.

 We must first decide whether the defendant properly preserved this issue for appeal. Rule 30 of the Federal Rules of Criminal Procedure provides in part that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds

of his objection." The question is whether a standing objection to any requested instructions not given serves the purpose of Rule 30. We hold that it does not. *See United States v. Parisien*, 574 F.2d 974 (8th Cir.), *cert. denied* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 154 (1978).

The purpose of Rule 30 is to give the trial court an adequate opportunity to correct any mistakes in the jury charge. *Id.* at 976. A standing objection does not serve this purpose and therefore we find that it does not relieve counsel from the obligation of making specific exceptions as required by Rule 30. In this case, the district court may have inadvertently omitted the alibi instruction, and defense counsel could have easily and quickly pointed out that omission before the jury retired.

Since the defendant failed to make a timely objection to the district court's failure to give the alibi instruction, we may only reverse upon a finding that the failure to give the instruction was plain error affecting substantial rights of the defendant. *Fed.R.Crim.P.* 52(b). *See United States v. Parisien, supra*, 574 F.2d at 976; *United States v. Hartman*, 627 F.2d 7, 9 (6th Cir. 1980).

 We find that the failure to give the instruction was plain error affecting substantial rights of the defendant. The proposed alibi instruction was a proper statement of the law and Hamilton clearly presented sufficient evidence to warrant the giving of such an instruction. Under the circumstances of this case we find that it was reversible error for the district court to fail to give the requested alibi instruction. *See United States v. Burse*, 531 F.2d 1151 (2d Cir. 1976); *United States v. Megna*, 450 F.2d 511 (5th Cir. 1971).

## CONCLUSION

The defendant's conviction on Count One is REVERSED and REMANDED for retrial. The defendant's conviction on Count Three is AFFIRMED.

---

**3.** As noted previously, Hamilton's alibi only applied to Counts One and Two.