765 F.2d 147
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
CARL ZAMBRIKI, DEFENDANT-APPELLANT.
 NO. 84-1242
 United States Court of Appeals, Sixth Circuit.
 5/29/85
 
 BEFORE: ENGEL and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal by the defendant, Carl Zambriki, from an order entered by the United States District Court for the Eastern District of Michigan upon a jury verdict finding Zambriki guilty of controlled substance offenses. Carl Zambriki was indicted by a federal grand jury in a four count indictment of: one count of conspiracy to possess with intent to distribute and conspiracy to distribute LSD, a Schedule I non-narcotic controlled substance; two counts of possession with intent to distribute LSD and aiding and abetting in the possession with intent to distribute LSD; and one count of distribution of LSD and aiding and abetting in the distribution of LDS. See 21 U.S.C. Secs. 846, 841(a)(1); 18 U.S.C. Sec. 2. On January 18, 1984, a jury in the Eastern District of Michigan convicted Zambriki of all four charged offenses. On March 23, 1984, the Honorable Horace W. Gilmore entered judgment upon the jury's verdict and sentenced the defendant to a period of incarceration of four years on the conspiracy count, of four years each for the three remaining counts (to be served concurrently with the conspiracy count) and a two year special parole term. For the reasons stated below, we affirm the judgment of the district court.
 
 
 2
 At the beginning of trial, out of the presence of the jury, the government moved to introduce evidence of two prior similar acts by the defendant, the first of which occurred approximately two weeks prior to the acts charged in the indictment, the last of which occurred two days prior to the date of commencement of the conspiracy charged in the indictment. These acts concerned the delivery of LSD by the defendant to Larry Dixon[1] on November 12 and November 22, 1982, and the subsequent delivery of the LSD to undercover police officers William Bowman and Stephen Materna. Joint Appendix at 66-69. After argument on the motion and the creation of a separate record, the district court ruled that the prior similar acts were clearly admissible under Federal Rule of Evidence 404(b) and were not more prejudicial than probative. Jt. App. a t 77, 82.
 
 
 3
 On November 12, 1982, Larry Dixon met with Officer William Bowman and Maria Hanson at Dixon's house in Warren, Michigan. Bowman and Hanson asked Dixon if they could purchase 1,000 LSD tablets. Since Dixon did not have enough LSD available to provide the amount requested, he called his source, Carl Zambriki, who told Dixon to come over and get the LSD.
 
 
 4
 Larry Dixon, Maria Hanson and Officer Bowman then travelled to the defendant's house on Syracuse Street in Detroit, Michigan. Dixon entered the house alone, gave defendant the money Dixon had received from Bowman to pay for the LSD, and obtained the LSD from defendant. Dixon then returned to the car and gave the LSD to Officer Bowman.
 
 
 5
 On November 22, 1982, Larry Dixon met with Officers William Bowman and Stephen Materna at Dixon's house on Dodge Street in East Detroit (Dixon had moved from Warren, Michigan). Dixon had previously placed a call to defendant and said that he (Dixon) was coming over to purchase one thousand 'hits' of LSD. En route to defendant's house, and in keeping with defendant's request, Dixon, both officers, and a friend of Dixon's travelled to Dixon's brother's house in Centerline on State Park Street where Dixon dropped off Officer Materna and Dixon's friend and proceeded with Officer Bowman to defendant's house on Syracuse Street. Upon arriving at defendant's house, Officer Bowman informed Dixon that he had forgotten the money to pay for the LSD. Dixon entered the house alone and told defendant he had forgotten the money. The defendant then told Dixon that he would not let Dixon take the LSD on his own and that he would send his brother, Chris Zambriki, with Dixon to get the money for the LSD. Dixon, Officer Bowman, and Chris Zambriki then proceeded to Dixon's brother's house on State Park. Once there, Chris Zambriki gave Dixon the LSD which Dixon then handed to Officer Materna. Dixon then obtained from Officer Materna $1,100 which he gave to Chris Zambriki after taking out $50 or $75 to keep for himself. Dixon also testified that the defendant had set the price for the LSD which he sold to the undercover officer on November 12 and 22, 1982.
 
 
 6
 Larry Dixon further testified that on November 30, 1982, he received a telephone call from Officer Bowman informing him that Officer Materna wanted to buy 5,000 tablets of LSD. Dixon then called defendant, told him that he had someone who wanted to buy 5,000 tablets, discussed a price for the tablets with defendant, and told him that he would contact him later in the evening about getting the LSD. That evening Officers Bowman and Materna arrived at Dixon's house where they discussed the price of the 5,000 LSD tablets Officer Materna was to buy. Officer Materna remained at Dixon's house while Dixon and Officer Bowman travelled to defendant's house to purchase the LSD.
 
 
 7
 After waiting in front of defendant's house for a few minutes, Dixon saw him drive up to his house. Dixon then talked with defendant and was told by defendant that he would not make the sale because Dixon had not come alone. Dixon then told defendant that he would go home and call defendant. Dixon and Bowman then returned to Dixon's house where Dixon called defendant and was told by defendant that he would go through with the sale but would not come in Dixon's house. Rather, the defendant would send his friend Mike into Dixon's house to complete the sale.
 
 
 8
 When Mike arrived at Dixon's house, he, Dixon, and Officers Bowman and Materna went into the bedroom where Mike gave Materna the 5,000 LSD tablets and Materna gave Mike $2,800. Officer Bowman testified that Mike told him that defendant was outside in the car and was afraid to meet people. Mike further said that he would be taking care of the business for defendant in the future. Bowman also testified that in a telephone conversation with Larry Dixon on December 6, 1982, Dixon identified his source's full name as Carl Zambriki.
 
 
 9
 On January 6, 1983, Officers Bowman and Materna again met with Larry Dixon to arrange for the purchase of 2,000 tablets of LSD. Dixon placed a call to defendant and was told to meet defendant that evening at the parking lot of a K-Mart store at Sherwood and Outer Drive in Detroit. Dixon, the two officers, and a friend of Dixon's travelled to the K-Mart and parked in the lot next to defendant's black pick-up truck which was parked next to a large light pole illuminating the area. Dixon walked over to defendant's truck where he was asked by defendant if he had the money. He then walked back over to Officer Bowman's car to get the money. After obtaining the money from Officer Materna, Dixon went back to defendant's truck, reached across a passenger in the truck while giving defendant $1,100, and received the 2,000 LSD tablets from defendant. For his part in arranging the sale, Dixon was given $75.00 by Officer Materna.
 
 
 10
 On appeal the defendant contends the district court committed two prejudicial errors in the conduct of the trial. First, the defendant contends the district court erred in admitting evidence of other crimes, wrongs or acts, pursuant to Federal Rules of Evidence 404(b) and 403. Second, the defendant contends the district court erred in admitting the testimony of Officer Bowman concerning statements made by Larry Dixon for a nonhearsay purpose. We do not agree.
 
 
 11
 With respect to the defendant's first issue, concerning the district court's alleged error in admitting evidence of other acts pursuant to the Federal Rules of Evidence, we find no merit in his argument. Prior to calling its first witness and out of the presence of the jury, the government moved to introduce evidence of two prior similar acts of the defendant, pursuant to Federal Rule of Evidence 404(b), because the prior acts were inextricably intertwined with the acts charged in the indictment. These acts concerned the delivery of LSD by the defendant to Larry Dixon who, in turn, delivered the LSD to Officers William Bowman and Stephen Materna. The first delivery occurred on November 12, 1982. The second delivery occurred on November 22, 1982, two days before the commencement of the conspiracy charged in the indictment.
 
 
 12
 Following argument on the motion, and after the creation of a separate record, the district court ruled that the prior similar acts evidence was clearly admissible under Rule 404(b), and was not so prejudicial as to outweigh it probative value. Jt. App. at 77, 82. The evidence was introduced for the limited purpose of showing defendant's intent and knowledge. Defendant now complains that the admission of the evidence was reversible error because intent and knowledge were not squarely in issue and because the prejudicial effect of the evidence outweighed its probative value. Appellant's Brief at 3-7.
 
 Federal Rule of Evidence 404(b) provides:
 
 13
 Other crimes, wrongs or acts: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 14
 The trial court has wide discretion in determining whether to admit evidence under Rule 404(b) and in determining whether the evidence's probative value exceeds it potential prejudice. United States v. Czarnecki, 552 F.2d 698, 702 (6th Cir.), cert. denied, 431 U.S. 939 (1977). To be admissible, the evidence of the other crimes, wrongs or acts must be relevant to a material issue, must be similar in kind and reasonably close in time to the crime charged, must be clear and convincing, and must be more probative than prejudicial. United States v. Kane, 726 F.2d 344, 348 (7th Cir. 1984); United States v. Largent, 545 F.2d 1039, 1043 (6th Cir. 1976), cert. denied, 429 U.S. 1098 (1977). Once the trial court has admitted the evidence, its decision may not be reversed unless it constitutes an abuse of discretion. United States v. Hamilton, 684 F.2d 380, 384 (6th Cir.), cert. denied, 459 U.S. 976 (1982).
 
 
 15
 In the instant case, the evidence of prior similar acts satisfied the prerequisites for admissibility. The evidence was relevant to the material issues of intent and knowledge. Though defendant argues that these elements were never in issue, clearly the government had an affirmative duty to prove their existence beyond a reasonable doubt. United States v. Hamilton, 684 F.2d at 384. At a minimum, the testimony offered by Larry Dixon, and Officers William Bowman and Stephen Materna regarding the prior sale of LSD 'set a context which enabled the jury to evaluate whether the defendant[ ] [was] in fact 'willing and able' to proceed with the drug sale,' United States v. Moore, 732 F.2d 983, 987 (D.C. Cir. 1984), as well as to evaluate the defendant's knowledge of and agreement to participate in the conspiracy to possess and distribute LSD. United States v. Walker, 710 F.2d 1062, 1067 (5th Cir. 1983), cert. denied, 104 S.Ct. 995 (1984).
 
 
 16
 The possible relevance of the prior LSD sales to show intent and knowledge in the subsequent sales and conspiracy involving the same defendant cannot be disputed. Prior to trial, the government identified these two purposes for which the prior acts evidence would be used. These purposes were legitimate under Rule 404(b). The government then produced the testimony of three witnesses, one of whom, Larry Dixon, was an eye-witness who testified to having participated directly with the defendant in the prior sales, and the remaining two who corroborated Dixon's testimony. The testimony therefore provided clear and convincing proof to support a jury finding that the prior acts alleged had in fact occurred.
 
 
 17
 Further, the prior acts evidence was identical in kind and very close in time to the offenses charged in the indictment. The prior acts involved the sale of LSD by the defendant, through Larry Dixon, to Officers William Bowman and Stephen Materna. The conspiracy and substantive acts charged in the indictment involved the sale of LSD by the defendant, through Larry Dixon, to Bowman and Materna. The prior sales took place on November 12 and 22, 1982. The conspiracy was proven to have commenced on or about November 24, 1982, and the substantive acts of possession with intent to distribute LSD and distribution of LSD were proven to have taken place on or about November 30, 1982 and January 6, 1983. Thus, the prior acts occurred but a few days before the acts charged in the indictment and were probative of the defendant's ability and desire to sell drugs a short time later. See United States v. Moore, 732 F.2d at 987. Moreover, because the prior acts were identical in kind and close in time to the crimes charged, and because they demonstrated a pattern of drug dealing immediately preceding the charged offenses, the evidence related to the acts charged in the indictment in a clear and logical manner and obviated any problems of misleading the jury or confusing the issues.
 
 
 18
 In determining that the prior acts evidence was admissible under Rule 404(b), the trial court performed the necessary balancing of the probative value of the evidence against any potential unfair prejudicial effect as required by Federal Rule of Evidence 403. See Jt. App. at 77. That rule provides that evidence, even though relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. In the instant case, the probative value of the prior acts evidence was substantial. The acts took place immediately prior to those charged in the indictment, and were detailed in the testimony of Larry Dixon, William Bowman and Stephen Materna. Each of the acts bore a close relation to the offenses charged. Testimony regarding them was unequivocal and did not require the jury 'to pursue a complex chain of inferences arising from circumstantial evidence.' United States v. Moore, 732 F.2d at 989. The evidence of the prior sales was probative of the defendant's implicit willingness to traffic in LSD and to participate in a conspiracy to traffic in LSD. This evidence was reasonably necessary to enable the government to meet its burden of proof beyond a reasonable doubt as to the elements of intent and knowledge. These elements of the charged offense were placed in issue by the defendant's plea of not guilty. See United States v. Hamilton, 684 F.2d at 384. Without the prior acts evidence, the jury could have believed that it was Mike who sold LSD on November 30, 1982, rather than the defendant, and that it was defendant's companion who sold the LSD on January 6, 1983, rather than the defendant.
 
 
 19
 The danger of unfair prejudice in this case was also greatly reduced by three other factors. First, the trial court specifically required that a separate record be created to ensure that cooperating witness Larry Dixon would, in fact, testify to the prior LSD sales. The court noted that should the witness deny the acts, the defendant could be prejudiced. Jt. App. at 77-78. Second, the prior acts evidence was used only to prove intent and knowledge and could not logically have been used for any other purpose. The acts were not relevant to any other elements of the charged crimes and showed that the defendant had knowledge of the conspiracy and intended to participate in it by selling LSD to undercover officers through Larry Dixon. '[W]here the evidence was not relevant to any other convictions, where it was not materially relevant to any element of the conspiracy charge besides intent, and where it was highly probative on the appropriate issue of intent--there is no unfair prejudice.' United States v. Moore, 732 F.2d at 990. Third, although defense counsel could have asked for a limiting instruction, he failed to do so. However, the trial court's instructions to the jury made it clear that prior acts evidence could not be considered in determining whether the defendant committed the crimes charged in the indictment. See Jt. App. at 63-65. Given all of these factors, no unfair prejudice or abuse of discretion inhered in the court's admission of evidence of the prior similar acts.
 
 
 20
 With respect to the defendant's second issue, concerning the district court's alleged error in admitting the testimony of Officer Bowman about statements made by Larry Dixon, we again find no merit in his argument. During the direct examination of Officer William Bowman, testimony was elicited concerning the purchase of 1,000 tablets of LSD on November 12, 1982. The officer testified that he and Maria Hanson went to Mr. Dixon's house where Dixon told him that he only had 680 LSD tablets with him but that if the officer didn't mind going to the area of Six Mile and Mound in Detroit, the officer would be able to get the full 1,000 tablets. As the three prepared to leave Dixon's house, Dixon placed a call and stated 'We are on the way for the thousand.' The defendant argues that Officer Bowman's recital of the statements made to him by Larry Dixon constituted inadmissible hearsay. Appellant's Brief at 7-8.
 
 
 21
 Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' Fed. R. Evid. 801(c). The hearsay rule does not apply where the purpose of offering the extra-judicial statements is not to prove the truth of the statements, but merely to show that they were made, United States v. Gibson, 675 F.2d 825, 833-34 (6th Cir.), cert. denied, 459 U.S. 972 (1982), or to connect a series of events, United States v. Rajewski, 526 F.2d 149, 157-58 (7th Cir. 1975), cert. denied, 426 U.S. 908 (1976), or to show the basis for the existence of the conspiracy charged and the mutual trust which existed between the informant and his customers. United States v. Sperling, 726 F.2d 69 (2nd Cir.), cert. denied, 104 S.Ct. 3516 (1984). Further, where the declarant is also a witness the rationale of the hearsay rule does not apply since the declarant is subject to cross-examination by the defendant. United States v. Bohr, 581 F.2d at 1304.
 
 
 22
 In the instant case, the statements complained of were not hearsay because they were not offered for their truth. They were admissible to connect the series of events leading up to the sales of LSD and the conspiracy charged in the indictment; to show the basis for the witness' actions in travelling to the defendant's home on November 12, 1982; and to show the background of the conspiracy charged in the indictment by way of showing a prior successful course of dealing between Larry Dixon and the defendant. Moreover, Larry Dixon, the declarant, had already testified concerning the transaction of November 12, 1982, as follows:
 
 
 23
 They asked me if they could purchase a thousand tablets of LSD and I told them yes, but I didn't have enough available for them to get the whole thousand and I would have to call my source to get them. So I called Carl Zambriki and he said come over and get 'em.
 
 
 24
 Jt. App. at 28. Larry Dixon was available for cross-examination concerning the transaction, but the defense failed to question Dixon about it. Officer Bowman merely corroborated Dixon's testimony about this sale. Under these circumstances, we find that not only were the statements complained of not hearsay, but the hearsay rule has no application to this set of facts. Thus, there was no abuse of discretion in the district court's admission of Officer Bowman's testimony.
 
 
 25
 Accordingly, the judgment of the Honorable Horace W. Gilmore is hereby affirmed.
 
 
 
 [1]
 Larry Dixon was charged as a co-defendant in the indictment. He pled guilty to conspiracy prior to the trial and agreed to testify for the government in exchange for a dismissal of counts two, three and four, and in exchange for a maximum period of incarceration of eighteen months