972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES Of America Plaintiff-Appellee,
v.
Scyphio Calvert MCCLINTON Defendant-Appellant.
 No. 91-3844.
 United States Court of Appeals, Sixth Circuit.
 Aug. 11, 1992.
 
 Before NATHANIEL R. JONES, RALPH B. GUY, Jr. and KRUPANSKY, Circuit Judges.
 PER CURIAM:
 
 
 1
 The defendant, Scyphio Calvert McClinton (McClinton), appealed his jury conviction and the district court's judgment finding him guilty of robbing a bank in violation of 18 U.S.C. § 2113(a).
 
 
 2
 On January 11, 1991, at approximately 3:00 p.m., an African American male robbed the AmeriTrust Bank at 16501 Euclid Avenue in Cleveland, Ohio. The robber entered the bank, occupied himself momentarily at the standing desk-top counter, and subsequently approached the teller window of Jan Gallagher (Gallagher). He passed a note to Gallagher ordering her to give him all her ten and twenty dollar bills or "I'll blow your brains out." Gallagher removed $500 of "bait money" from a clip in her cash drawer which triggered the bank surveillance camera that recorded a rapid sequence of photographs. The robber accepted the money and left the bank.
 
 
 3
 On the day of the robbery, Gallagher described the robber to Special Agent Bonnie Rutherford (Rutherford) as a light complected black man, about six feet tall, between 25 and 30 years of age, with a distinctive moustache and a grey flecked beard. She also noted that the suspect wore glasses, a beige coat, a flight shirt with a turned up collar, and a cap. At trial, Gallagher further testified that during the robbery she had the opportunity to face the robber directly.
 
 
 4
 Debra Biggins (Biggins), another bank teller stationed approximately five or six feet from Gallagher, stated that she knew a robbery was in progress because she saw a note on the counter and exchanged glances with Gallagher. She further testified that she observed the robber for approximately one and one-half minutes.
 
 
 5
 On February 4, 1991, approximately three weeks after the robbery, Rutherford exhibited a copy of the bank surveillance photograph together with a photographic array of six individuals, including the defendant, to Gallagher and Biggins in an effort to identify of the robber. The photographic array included black and white photographs of black males between the ages of 25 to 35 years with beards and mustaches similar to the defendant's. Both Gallagher and Biggins identified the robber from the bank surveillance photograph. Only Gallagher selected the photograph of the defendant from the six pictures in the photographic array.
 
 
 6
 On March 7, 1991, Rutherford and four other F.B.I. agents executed an arrest warrant for the defendant. They discovered him hiding in the basement of a house rented by the single defense witness, Jeanne Wilson.
 
 
 7
 On April 3, 1991, a federal grand jury returned an indictment charging the defendant with bank robbery in violation of 18 U.S.C. § 2113(a). The indictment alleged that the defendant, by force, violence, and intimidation, took the sum of $489.56 from Jan Gallagher, a teller at AmeriTrust Bank in Cleveland, Ohio. The defendant pleaded not guilty at the April 11, 1991 arraignment.
 
 
 8
 On May 1, 1991, the defendant filed a motion to voir dire identification witnesses asserting that the pretrial identification procedure was unduly suggestive and that the bank tellers' testimony was unreliable. The district court conducted an evidentiary hearing on June 10, 1991 at which Rutherford, Gallagher and Biggins testified. Subsequently, the court overruled the defendant's motion to suppress identification testimony concluding that the photo array was "a fair display of people who have similar appearance" and that the pretrial identification procedure was not unduly suggestive.
 
 
 9
 During the trial, both Gallagher and Biggins testified to the events of the robbery and a courtroom identification of the defendant as the robber. Rutherford testified to the pretrial identification procedure. The government also introduced the testimony of Nicholas Gnall (Gnall), the defendant's supervisor at the place of his employment who also identified the defendant as the individual in the bank surveillance photograph. Before Gnall testified, the district court examined him outside the presence of the jury. Gnall identified the person in the surveillance photograph as the defendant noting an indentation on the left side of the individual's neck which was identical to an indentation on the defendant's neck that resulted from an excision of a cancerous tumor. He also testified that the hat and jacket worn by the individual in the photograph were similar to those which were worn by the defendant at work. Defense counsel moved to strike Gnall's lay opinion testimony, which had been proffered pursuant to Rule 701 of the Federal Rules of Evidence, because of the poor quality of the surveillance photograph and because the jury was as capable of viewing the photographs and arriving at its own independent decision of the robber's identity without lay opinion assistance. The court overruled the defendant's motion to strike Gnall's testimony and stated that his testimony satisfied the standards of Rule 701. Subsequent to the court's voir dire examination of Gnall, he was permitted to identify the defendant, an employee that he had known and supervised for three years, as the individual in the bank surveillance photograph. He did not testify to any other matter.
 
 
 10
 On July 9, 1991, the jury returned a verdict of guilty. The court sentenced the defendant to a 66 month term of incarceration, followed by three years of supervised release, and payment of restitution in the amount of $489.56 to AmeriTrust Bank.
 
 
 11
 In his first assignment of error, the defendant charged that the district court erred when it permitted the identification testimony of the two bank tellers because the pretrial identification procedure was unduly suggestive. He also asserted that the testimony of Biggins should have been suppressed because she was unable to identify the defendant from the photographic array.
 
 
 12
 In determining if an out-of-court identification procedure was unduly and impermissibly suggestive, the United States Supreme Court has adopted a totality of the circumstances approach. Manson v. Brathwaite, 432 U.S. 98, 114 (1977). The two-part test enunciated by the Court has placed the burden upon the defendant to prove that the out-of-court identification procedure was unduly and impermissibly suggestive and that, under all the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. Id. at 107. The elements to be considered in protecting against the corrupting effect of a suggestive identification were defined as: 1). the opportunity of the witness to view the criminal at the time of the crime; 2). the attentiveness of the witness; 3). the accuracy of the witness' pre-photographic line-up description of the criminal; 4). the level of certainty demonstrated at the photographic viewing; and 5). the time that had elapsed between the crime and the photographic identification. Id. The district court's conclusion concerning the reliability of witness identifications is reviewed pursuant to an abuse of discretion standard and is irreversible upon appellate review unless clearly erroneous. United States v. Hamilton, 684 F.2d 380, 383 (6th Cir.1982).
 
 
 13
 In the instant action, the pretrial identification of the defendant was not improper because the defendant failed to prove any impropriety in the photographic array or in the procedure used to display the photographs to the witnesses. United States v. Causey, 834 F.2d 1277, 1286 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). See also United States v. Monks, 774 F.2d 945, 957 (9th Cir.1985) (exhibition of bank surveillance photograph before photographic array did not jeopardize identifications). Moreover, the failure of Biggins to identify the defendant from the photographic array attaches to the weight to be accorded her testimony by the jury. Causey, 834 F.2d at 1286.
 
 
 14
 In the instant case, Gallagher accurately described the physical appearance of the robber to Rutherford immediately after the incident. She had observed his face at close range during the crime, and she subsequently selected him from both the surveillance photo and photographic array, noting his clothing, speckled beard, and the unusual shape of his mustache. Although Biggins was unable to identify the defendant from the photographic array, she testified that she viewed the robber during the robbery for approximately one and one-half minutes, identified him from the surveillance photo three weeks later, and identified him in the court room. Accordingly, the district court's finding that the pretrial identification procedure was not unduly suggestive was not clearly erroneous.
 
 
 15
 The defendant's second assignment of error is equally without merit. He charged that Gnall's testimony was inadmissible because of its failure to comply with Fed.R.Evid. 701[1] since the jury was capable of comparing the surveillance photograph with the defendant and arriving at its own conclusion in determining if he was the robber. The decision to admit testimony under Rule 701 is committed to the sound discretion of the district court and will not be reversed absent a finding that the trial court abused its discretion. United States v. Calhoun, 544 F.2d 291, 297 (6th Cir.1976). Furthermore, the modern trend among courts favors admission of lay opinion testimony, provided that it is well-founded on personal knowledge and is opened to cross-examination. United States v. Booth, 936 F.2d 573 (6th Cir.1991), cert. denied, 112 S.Ct. 915 (1992).
 
 
 16
 In the instant action, Gnall's identification testimony was properly admitted because it was rationally based on his perceptions and was helpful to the jury in determining if the defendant was the individual appearing in the surveillance photograph. Moreover, defense counsel fully exercised his opportunity to cross-examine the witness without limitation. Since the jurors had the surveillance photograph before them, they could evaluate the credibility of Gnall's perception and identification. United States v. Maddox, 944 F.2d 1223 (6th Cir.1991), cert. denied sub nom. Western v. United States, 112 S.Ct. 1219 (1992). Accordingly, the district court did not abuse its discretion when it admitted Gnall's testimony into evidence.
 
 
 17
 Based upon the briefs and arguments of counsel, the district court's disposition is hereby AFFIRMED.
 
 
 
 [1]
 Rule 701 provides:
 If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.