**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Zale SNOW, Defendant-Appellant.**

**No. 76–1815.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1976.
Decided April 7, 1977.

William W. Milligan, U. S. Atty., Daniel A. Brown, Columbus, Ohio, for plaintiff-appellee.

Max Kravitz, Charles K. Milless, Columbus, Ohio (Court appointed—CJA), for defendant-appellant.

Before WEICK and LIVELY, Circuit Judges and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

James Zale Snow appeals from his conviction for armed bank robbery in violation of 18 U.S.C. Sec. 2113(a), (d). A jury verdict of guilty was returned on March 12, 1976, after a trial in the Eastern Division of the Southern District of Ohio. He was sentenced on April 15th to fifteen years imprisonment to be served consecutively to any State sentence then being served.

The Thurber Village Office of the Buckeye Federal Savings and Loan Association of Columbus, a savings and loan association, within the meaning of 18 U.S.C. Sec. 2113, was robbed of approximately $2,375 on March 24, 1971. The case was assigned by the F.B.I. to Special Agent Richard A. Cleary for investigation. In February of 1974, Agent Cleary was informed by the Columbus Police Department of an unidentified tip that the appellant, James Z. Snow, had committed the robbery. After investigation of the tip, Cleary was able to develop Snow as a likely suspect.

Cleary was unable to locate Snow during the first seven months of his investigation that Snow was a possible suspect. In September Cleary discovered that an arrest warrant had been issued for Snow, charging him with an assault on the Chief of Police of Obetz, Ohio. On September 5th, Richard Roe, parole officer for the Ohio Adult Parole Authority, filed an arrest warrant against Snow, based on the facts of Snow's involvement with the Obetz Chief of Police.

At the request of Cleary, Special Agents Richard H. Prunier and Thomas B. Dicker found and arrested Snow on September 27, 1974. He was confined in the Franklin (Ohio) County Jail. The offense against the Obetz Police Chief was a misdemeanor and he gave bond for this on September 30th. In the meantime, Roe having learned of the arrest, placed a hold order or detainer against Snow on the same day for parole violation. Snow was given a hearing on this charge on October 7th. The State Court Judge found that there was probable cause that he had violated his parole and continued him in custody. Snow remained confined in the Franklin County Jail until he was returned to the Chillicothe Correctional Institute on January 14, 1975. While being thus confined in jail, a line-up was held on October 10, 1974, at which time three witnesses to the robbery in question identified Snow as the robber.

On December 9, 1975, Snow was indicted on one count of robbery of the Thurber Village Branch of the Buckeye Federal Savings and Loan Association of Columbus, Ohio. Pursuant to this indictment he was tried to a jury, found guilty and sentenced as above stated.

■ Prior to the trial, the District Judge denied an oral motion to suppress the evidence of the line-up identification. The denial of this motion is the appellant's first assignment of error. It is claimed that the

F.B.I. agents had no jurisdiction to make an arrest on a State warrant charging a misdemeanor and that Snow was illegally held in custody at the time of the line-up.

The District Judge ruled that the initial arrest was without authority and law. We accept that ruling. The Judge said,

"The September, 1974 arrest by agents of the F.B.I. was without authority and law. Furthermore, the Court cannot find the arrest to have occurred in bad faith, but certainly, this Defendant was arrested with a lack of ordinary care for the compliance with proper lawful procedure. The fashion of this arrest is what is uncomplimentary to the F.B.I. and as far as the Court can determine, a result of negligence."

We hold, as did the District Judge, that Snow was in proper legal custody at the time of the line-up. He gave bond for the arrest on the charge of assaulting the Obetz Police Chief. That really terminated the confinement on the initial arrest. Anyway, he was legally in custody as a parole violator at the time of the line-up identification.

The second assignment of error is the denial by the District Judge of the appellant's motion to suppress evidence of a photographic identification. Carol Andreae, who was one of the two customers in the bank at the time of the robbery, was living in Washington, D.C. at the time Snow was being investigated for the robbery. On February 10, 1975, she was shown a spread of eight pictures, including one of Snow, for the purpose of identification.

It is claimed on behalf of the appellant that this photographic identification was so impermissibly suggestive as to give rise to irreparable misidentification. Agent Cleary sent a photograph of Snow to Washington and F.B.I. agent James F. Brennan, Jr. arranged a spread of eight photographs with seven from the Metropolitan Washington Police Department. Each of these photographs, including the one of the appellant, had a police department identification at the bottom. This was successfully covered by Agent Brennan when the photographs were shown to witness Andreae.

All of the photographs were in color and the seven, other than the appellant's, appeared to have been taken at the same place. The appellant's photograph and one other displayed a full face and a profile and the appellant's was slightly smaller in size than the others, about one-half inch. Finally, when they were shown to the witness the photograph of the appellant was at the bottom of the group.

The witness said she examined the photographs for several minutes and picked out one that she believed to have been the man involved in the robbery. This was the one at the bottom of the group and was the photograph of the appellant. She said it was the same size as the others and did not appear any different in any respect than the other photographs. She also said that she thought there was more than one picture portrayed on the particular photograph she selected.

Miss Andreae was confronted by the robber at the time of the robbery when he told her to lie down on the floor. At this time she looked at the robber until he told her to "look down or I'd be dead." Prior to this she viewed him for three and a half or four minutes. At the time of the trial she made an in court identification.

We find, as did the District Judge, that these photographs were not so impermissibly suggestive as to violate any constitutional rights of the appellant. Considering these photographs in the light of the totality of circumstances, we conclude that the evidence was admissible and that the District Judge was not in error in denying the motion to suppress.

Another assignment of error is that the trial judge permitted Frederick E. Webb to testify as an expert on the comparison of photographs of the appellant Snow with bank surveillance photographs of the robber.

Mr. Webb described himself as a forensic scientist for the Commonwealth of Virginia. His work consisted of the examination of documents, examination of photographs and related types of work. He had been doing

this type of work for approximately thirty four years.

Mr. Webb had Bachelor of Arts and Bachelor of Science degrees from Ascension, Missouri at Warrenburg, Missouri and a Master of Arts degree from the University of Missouri. He went with the F.B.I. in 1942 to be trained as a document examiner. He attended a prescribed course of training in the F.B.I. laboratory under qualified teachers and experts in the field. He also studied the literature on the subject. Mr. Webb worked on actual cases under the supervision of these experts until he acquired a sufficient degree of proficiency to be assigned cases of his own.

Mr. Webb has testified in Federal, State and Military Courts since approximately 1943 or 1944. Since 1948 he has testified in various courts concerning matters relating to photographic evidence and the interpretation of photographs. Mr. Webb gave the identical type of testimony in *United States v. Brown*, 511 F.2d 920, 924 (2nd Cir. 1975) and it was held to have been properly admitted.

The trial judge allowed defense counsel to conduct a voir dire examination of Mr. Webb, outside the presence of the jury, relative to his qualifications as an expert. Counsel cross examined the witness extensively. At the conclusion of the voir dire examination the trial judge said:

> "Very well. The Court will permit this testimony. However, the prosecutor is cautioned that this witness is to give no opinion that the person in the pictures is the person in the bank surveillance picture; that that is the same person all the way. He may testify essentially as he's testified here before the jury."

Mr. Webb adhered to that admonition. He examined a roll of film, 35 millimeter film commonly known as bank surveillance film. This pictured the robber in the bank at the time of the robbery. He compared exposures on this file with photographs of a known individual, the appellant, which were submitted to him. He also made a comparison from the film with a photograph of a revolver.

 Trial judges have a wide discretion in determining whether or not to admit expert testimony. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), rehearing denied; 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129; *United States v. Stifel*, 433 F.2d 431, 435 (6th Cir. 1970). The question before us is whether the trial judge abused his discretion in admitting the testimony of Webb as an expert. We conclude that he did not.

Finally, it is claimed on behalf of the appellant that the prosecutor impermissibly commented on the failure of the appellant to testify in his own behalf at the trial.

There is no merit to this assignment of error. There were witnesses, other than the appellant, who could have testified about his weight, which was the subject of the prosecutor's comment.

We conclude that the judgment of the District Court should be affirmed.