UNITED STATES of America

v.

Robert Scott CHAPMAN et al.

No. CR–1–80–39–1–2.

United States District Court,
S. D. Ohio, W. D.

Sept. 16, 1980.

Christopher K. Barnes, Terry W. Lehmann, Asst. U.S. Attys., Cincinnati, Ohio, for plaintiff.

Douglas S. Weigle, Cincinnati, Ohio, for defendants.

## DECISION ON MOTION TO SUPPRESS IDENTIFICATION TESTIMONY

SPIEGEL, District Judge:

This matter came on for hearing upon the defendant's motion to suppress identification testimony, the Government's memorandum in opposition, the testimony of the Special Agent of the Federal Bureau of Investigation and four bank employees who were present at the time the alleged hold–up took place on April 29, 1980, the exhibits, and the arguments of counsel. Upon consideration thereof and for the reasons set forth below, the Court is of the opinion that the motion should be denied.

The evidence presented at the hearing on this matter is as follows: The bank robbery occurred on April 29, 1980, at the Society National Bank located in Amelia, Ohio. Following the robbery, agents of the FBI interviewed four bank employees who were present at the time and received from them descriptions of the two individuals who had robbed the bank earlier that day. Based on those descriptions, FBI agents compiled a group of photographs and showed it to each of the employees individually in an effort to determine the identity of the perpetrators. None of the employees identified anyone from the group of photographs.

More than a month later, FBI agents received information which led them to believe that defendant, Robert Scott Chapman, was involved in the robbery. Agents subsequently compiled an entirely new ar-

ray of seven photographs, which included a photograph of the defendant. These photographs also were shown to the four bank employees individually. Each employee was asked to look carefully at each of the pictures and to indicate whether or not any of the individuals shown in the photographs were the ones who had committed the bank robbery in April.

All of the persons depicted by the photographs, which are black and white, are of similar appearance. Each photograph contains a full face and at least one side view of a man. There was nothing which would cause the defendant's picture to stand out in any way. Each of the four witnesses independently identified the picture of defendant, Robert Scott Chapman, from the array, as one of the perpetrators.

The testimony of the bank employees indicated that the FBI agents did nothing, when showing them the photographs on June 6, 1980, to suggest or imply in any way that the employees should identify any particular photograph, or even to suggest or imply that the photo array might contain the photographs of the person or persons they saw during the robbery. The witnesses further testified that they were not allowed to examine the backs of the photographs before making their selections, and they followed the agents' instructions explicitly. Finally, all four bank employees stated that they did not discuss the matter of their identification with anyone else in the bank either before or after they had an opportunity to examine the photographs.

At the hearing, each bank employee was again handed the photo spread and each employee again selected the photograph of defendant as being one of the perpetrators. The four bank employees who witnessed the robbery all testified they had had an opportunity to observe the perpetrators for three to five minutes while the robbery was taking place. The bank was well-lit, and most of the witnesses were from five to twenty-five feet from one or both of the perpetrators during this time. Two of the witnesses focused on the individual who remained on the lobby side of the counter; the other two

witnesses also were able to observe him, as well as the man who jumped over the counter. Despite the fact that the perpetrators tied bandannas or kerchiefs around their faces which covered their chins up to the tips of their noses, the witnesses were able to testify as to their appearance, age, height, weight, hair color and style, and facial features which were not covered. All were positive of their identification of the picture of the defendant as the man in the lobby.

The issue raised by defendant's motion to suppress is whether the pretrial identification procedure was so "unnecessarily suggestive" as to result in the denial of due process to the defendant based on a "totality of the circumstances." In *Simmons v. United States*, 390 U.S. 377 at 384, 88 S.Ct. 967 at 971, 19 L.Ed.2d 1247 (1968), the Supreme Court noted:

> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

In the instant case, the Court finds nothing in the procedure employed by the Special Agents of the FBI that was impermissi-

bly suggestive. In *United States v. Snow*, 552 F.2d 165 (6th Cir. 1977), the Court of Appeals found that a photospread consisting of eight photographs, including the defendant's photo which was slightly smaller in size and appeared to have been taken at a different place than the others, was not so impermissibly suggestive as to violate any of the defendant's constitutional rights. And, as noted by the Court in *Simmons v. United States, supra*, the most correct photographic identification procedure is to show witnesses pictures of a number of individuals without indicating whom they suspect. 390 U.S. at p. 383, 88 S.Ct. at p. 970. This was exactly the procedure followed with the photo spread involving the defendant.

In *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court determined that reliability is the "linchpin" in determining the admissibility of pretrial identification testimony. 432 U.S. at p. 114, 97 S.Ct. at p. 2253. The Court, citing *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972), went on to state the facts which are to be considered and weighed against the corrupting effect of suggestive identification:

1) The opportunity of the witness to view the criminal at the time of the crime;
2) The witness' degree of attention;
3) The accuracy of his prior description of the criminal;
4) The level of certainty demonstrated at the confrontation; and
5) The time between the crime and the confrontation.

It is the opinion of the Court that an analysis of the "totality of the circumstances," surrounding the defendant's photo identification, which includes a consideration of the factors just listed, conclusively demonstrates that the procedure employed in the defendant's pretrial identification was not unnecessarily suggestive, and the identification of the defendant by the bank employees who witnessed the robbery is reliable.

Accordingly, defendant's motion to suppress is denied.

SO ORDERED.