**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raymond "Red" TYLER,
Defendant-Appellant.**

No. 82–5074.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 5, 1982.

Decided Aug. 18, 1983.

---

Ross E. Alderman, Asst. Public Defender, Metropolitan Nashville, Nashville, Tenn. (court-appointed), for defendant-appellant.

Joe B. Brown, U.S. Atty., Derry Harper (argued), Nashville, Tenn., for plaintiff-appellee.

Before EDWARDS, Chief Circuit Judge, JONES, Circuit Judge, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant Raymond Tyler appeals from his jury conviction for selling stolen firearms in violation of 18 U.S.C. § 922(j) [1] and possessing firearms in violation of 18 U.S.C. Appendix, § 1202(a)(1). [2] He contends that those convictions should be reversed because they were based on a pretrial photo identification procedure so impermissibly suggestive as to taint the key witness' in-court identification. Although we believe that photo identification procedures require close scrutiny and that they must be conducted carefully to ensure the reliability of eyewitness in-court identification, we find that their use in this particular case does not require reversal.

The conviction in this case arises from the sale of firearms allegedly stolen from a Kentucky gun shop. Agent James Cavanaugh of the Bureau of Alcohol, Tobacco and Firearms conducted an investigation of the interstate transportation of these stolen firearms and uncovered suspects Lloyd Covington, a/k/a "K.Y.", and Raymond Tyler, a/k/a "Red". Further investigation led Agent Cavanaugh to Jesse Pipkin, who allegedly assisted in the sale of the firearms.

Pipkin informed Agent Cavanaugh that he had known Covington for some time, that Covington and two other men had come to him to sell some guns, and that he had arranged the sale of those guns for around $550.00. Cavanaugh and other agents recovered eleven guns when Pipkin led them to the individual to whom he had sold the firearms.

Before locating Pipkin, Agent Cavanaugh obtained a "mug shot" of suspect Tyler from the Robertson County Sheriff. Cavanaugh did not intend to use Tyler's picture in a photographic array. But, after locating Tyler and questioning another witness,

---

1. 18 U.S.C. § 922(j) provides that:
   It shall be unlawful for any person to receive, conceal, store, barter, sell or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.
   18 U.S.C. § 2 provides:
   (a) Whoever commits an offense against the United States or aids, abets, counsels, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. 18 U.S.C. Appendix § 1202(a)(1) provides:
   (a) Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . .
   and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
   Tyler was also acquitted of the charge that he violated 18 U.S.C. § 922(i), which provides:
   It shall be unlawful for any person to transport or ship in interstate commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

McIntosh, the agent did show Pipkin a photographic array. Cavanaugh already had the mug shot of Tyler from Robertson County. After he returned to Nashville, he selected several photographs closely resembling Tyler's from the Nashville records. Cavanaugh could not, however, locate a picture of Tyler in Nashville.

Agent Cavanaugh showed Pipkin two photo arrays, containing pictures of Tyler, Covington and eight other individuals. All of the photos were police mug shots. The photos were substantially similar in size, shape and pose. Tyler's photo, however, was slightly smaller, slightly darker and had a larger white border. Tyler's photo also had a Robertson County mug board and height marks in the background. Agent Cavanaugh testified that Robertson County was not significant to the investigation.

When Agent Cavanaugh showed him the pictures one by one and asked him if he recognized anyone who had brought guns to him, Pipkin identified both Covington and Tyler without hesitation. Cavanaugh testi-

fied that Pipkin told him that he recognized Tyler because of the manner in which he wore his hair and because of his older appearance. At the suppression hearing, Pipkin testified that he did not recognize anything distinctive about the photographs, did not notice that the mug board on Tyler's picture was different from the others and did not notice the height chart.

On November 18, 1981, Tyler and Covington were indicted. The trial court denied defendant's motion to suppress any reference to Pipkin's pretrial or in-court photo identification. Tyler's trial, which was severed from Covington's, began on January 27, 1982. At trial, Pipkin testified that Covington and two other men had come to sell some guns. He identified in the courtroom both Tyler and the other man. Pipkin stated that his in-court identification was based solely upon his previous meeting with Tyler and not upon the earlier photo identification.

The jury convicted Tyler on two counts of the indictment.[3] The defendant waived the

---

**3.** The indictment reads as follows:

### INDICTMENT

#### Count One

The Grand Jury charges:
On or about the 13th day of October, 1981, in the Middle District of Tennessee, RAYMOND "RED" TYLER and LLOYD "K.Y." COVINGTON, knowingly *did transport and ship* in interstate commerce from the State of Kentucky to the State of Tennessee stolen firearms, that is, one Smith & Wesson .38 caliber revolver, two Harrington & Richardson .22 caliber revolvers, two Harrington & Richardson .32 caliber revolvers, one Rossi .22 caliber derringer, one High Standard .22 caliber derringer, one High Standard .22 caliber revolver, one Winchester .30-.30 rifle, lever action, and two Savage .410 shotguns, knowing and having reasonable cause to believe that the firearms were stolen.
In violation of Title 18, United States Code, Sections 922(i) and 2.

#### Count Two

The Grand Jury further charges:
On or about the 13th day of October, 1981, in the Middle District of Tennessee, RAYMOND "Red" TYLER, being a person who had *previously been convicted* of a felony in the Western District of Kentucky, *did unlawfully possess firearms*, that is, one Smith & Wesson .38 caliber revolver, two Harrington & Richardson .22 caliber revolvers, two Har-

rington & Richardson .32 caliber revolvers, one Rossi .22 caliber derringer, one High Standard .22 caliber derringer, one High Standard .22 caliber revolver, one Winchester .30-.30 rifle, lever action, and two Savage .410 shotguns, which firearms had previously been transported in commerce or affecting commerce.
In violation of Title 18, United States Code, Appendix, Section 1202(a)(1).

#### Count Three

The Grand Jury further charges:
On or about the 13th day of October, 1981, in the Middle District of Tennessee, LLOYD "K.Y." COVINGTON, being a person who had previously been convicted of a felony in the Middle District of Tennessee, did unlawfully possess firearms, that is, one Smith & Wesson .38 caliber revolver, two Harrington & Richardson .22 caliber revolvers, two Harrington & Richardson .32 caliber revolvers, one Rossi .22 caliber derringer, one High Standard .22 caliber derringer, one High Standard .22 caliber revolver, one Winchester .30-.30 rifle, lever action, and two Savage .410 shotguns, which firearms had previously been transported in commerce or affecting commerce.
In violation of Title 18, United States Code, Appendix, Section 1202(a)(1).

#### Court Four

The Grand Jury further charges:

preparation of a presentence report and was sentenced to concurrent sentences of two and five years.[4] The defendant now challenges Pipkin's in-court identification based upon the suggestiveness of the pretrial photographic array.

This Court must set aside defendant's conviction "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court stated that the "central question" in determining the scope of the due process protections against the admission of evidence obtained through suggestive identification procedures is "whether under 'the totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 192, 93 S.Ct. at 378. This Circuit has acknowledged that "reliability is the key factor in determining the admissibility of identification evidence." *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir.1979). The Supreme Court, in *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382, articulated five indicia that we must consider in assessing reliability or the "likelihood of misidentification":

> the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.

As we reiterated in *Bordenkircher*, "These factors must be weighed against the effect of the suggestive procedure to determine whether the identification is so unreliable as to create a substantial likelihood of misidentification." 608 F.2d at 251, *citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

Under the totality of circumstances approach established in *Biggers* and followed in this Circuit, we are unable to find, on the particular facts of this case, that the identification procedure was so unreliable as to create a substantial likelihood of misidentification. The crux of defendant's argument is that the method by which his photo was displayed, with a mug board and height chart different from the other photos, was both unnecessary and impermissibly suggestive. In *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir.1976), this Court expressed its concern with the great influence that post-experience suggestion can have upon a witness' memory. We warned:

> Since this danger is inherent in every identification of this kind, courts should be especially vigilant to make certain that there is no further distortion of the possibly incomplete or mistaken perception of a well-meaning witness by suggestive or other unfair investigatory techniques.

532 F.2d at 1066, *citing, United States v. Wade*, 388 U.S. 218, 228–229, 87 S.Ct. 1926 (1967). For the reasons expressed in *Russell*, we must remain vigilant of suggestive and unfair investigatory techniques in the troublesome area of photographic identification. Yet, the question before us is not whether this photo array was suggestive, but rather, whether it was *impermissibly suggestive.* Each case must be considered

On or about the 13th day of October, 1981, in the Middle District of Tennessee, RAYMOND "RED" TYLER AND LLOYD "K.Y." COVINGTON *did sell and dispose of stolen firearms,* that is, one Smith & Wesson .38 caliber revolver, two Harrington & Richardson .22 caliber revolvers, two Harrington & Richardson .32 caliber revolvers, one Rossi .22 caliber derringer, one High Standard .22 caliber derringer, one High Standard .22 caliber revolver, one Winchester .30–.30 rifle, lever action, and two Savage .410 shotguns, *which*

were then moving as, were a part of, and constituted interstate commerce from the State of Kentucky to the State of Tennessee, knowing and having reasonable cause to believe that the firearms were stolen.
In violation of Title 18, United States Code, Section 922(j) and 2.

A TRUE BILL

4. Tyler was sentenced to two years on count two and five years on count four.

on its own facts. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

In view of the particular facts of this case and of the decisions of this Court, we are unable to find evidence of impermissible suggestion. In *Russell,* this Court did suppress a witness' identification of a fleeing bank robber after an impermissibly suggestive photographic array. The witness in that case picked the "wrong" picture during the array and only picked the defendant's picture after the conducting agents impermissibly and irreparably suggested that he was suspected of the crime. In *United States v. Ayendes,* 541 F.2d 601, 605 (6th Cir.1976), however, this Court held that although the photographic identification procedure which commingled three black and white photos with color pictures of each of the defendants may have been "suggestive", it was not "so impermissibly suggestive as to render it highly likely that [it] led to irreparable misidentifications." In *United States v. Snow,* 552 F.2d 165 (6th Cir. 1977), this Court further held that an array in which the photos of the defendant and another individual were slightly different in size and pose from the other photos was not "so impermissibly suggestive as to violate any constitutional rights of the defendant." 552 F.2d at 167.

Tyler's photographs, as well, were slightly different from the other photographs displayed to Pipkin. But like the photographs displayed in *Snow* and *Ayendes,* Tyler's photos were substantially similar to the others in the array. Pipkin in fact testified that there was nothing distinctive about the photographs that he was shown, that he did not notice that Tyler's photograph was the only one from Robertson County and that he did not pay attention to the mug boards across the front of the pictures because he was looking at the faces. Furthermore, there is no evidence that the conducting agents acted in a manner which was as suggestive as that exhibited by the agents in *Russell.* This is not a case where only the defendant's photo was arrayed, *Manson,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *U.S. v. Williams,* 616 F.2d 759 (5th Cir.1980), where the defendant's photo was substantially different from the others, *Solomon v. Smith,* 645 F.2d 1179 (2d Cir.1981), where the conducting officers through inference and gesture emphasized the defendant's photo or where the witness was in any way pressured to select the defendant's photo from the array. *Russell,* 532 F.2d 1063.

Absent any comparable "suggestive or unfair investigatory techniques," *Russell,* 532 F.2d at 1066, we are unconvinced that the pretrial photo identification used here was so impermissibly suggestive as to taint the in-court identification. Pipkin had ample opportunity and attention to identify Tyler in the six or seven minutes that he spent with him during the illicit firearms transaction. Pipkin testified during the suppression hearing that he was able to identify Tyler's photograph a few months after the crime because of his "features, his looks, the way he wore his hair." He also stated that Tyler looked older and "like he had a hard time in life. And just the way he wears his hair. It was like shaggy, or what have you, like he didn't take care of it or nothing." This detailed description of the defendant supports the reliability of Pipkin's identification. Moreover, Pipkin showed no hesitancy in identifying Tyler's photograph or in identifying Tyler at trial. Pipkin stated that there was no question in his mind that Tyler had participated in the firearms transaction. Pipkin's statements have been consistent and the defendant has introduced no evidence indicating a "record" of unreliability.

These circumstances surrounding the photographic array support the "reliability" of Pipkin's identification. Further, we conclude that the array itself, in which the defendant's photos were substantially similar to the others shown, was not impermissibly suggestive. While we uphold the warning in *Russell* and remain vigilant of illegitimate photographic identification procedures, we hold, on these narrow circumstances, that the trial court's denial of defendant's suppression motion was correct.

Accordingly, the district court's judgment is hereby AFFIRMED.