787 F.2d 593
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
JERRY MILLER, JR., Defendant-Appellant.
 85-5460
 United States Court of Appeals, Sixth Circuit.
 3/26/86
 
 AFFIRMED
 E.D.Ky.
 On Appeal from the United States District Court for the Eastern District of Kentucky
 Before: ENGEL, KENNEDY, and CONTIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-Appellant appeals from his conviction under 18 U.S.C. Sec. 2113(a) and (d), of armed robbery of the Citizen's Federal Savings and Loan Association in Covington, Kentucky. The basis of his appeal is two-fold: first, he argues that the trial court erred in allowing into evidence proof that he may have committed another bank robbery in Cincinnati, two days after the Covington robbery; and second, he argues that the in-court identifications of him were based on impermissibly suggestive out-of-court identifications. We affirm.
 
 I.
 Evidence of Other Crimes
 
 2
 Normally, evidence of other crimes committed by defendants is inadmissible at trial. Fed. R. Evid. 404(b). The rule reads:
 
 
 3
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 4
 The government seeks to invoke the exception relating to proof of identity. The government argued that there were sufficient similarities between the two robberies and offered fingerprint proof linking appellant to the Cincinnati robbery. In essence, the government asserted that the jury could find that the same person committed both robberies because each was attended by certain 'signature' qualities.
 
 
 5
 Before admitting prior acts evidence, the district court must determine that the evidence is admissible for a proper purpose--i.e., the prior acts generally must be relevant to a matter at issue and must be substantially similar to, and near in time to, the offenses charged in the indictment. United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir. 1985). When the government seeks to introduce evidence of another act or crime in order to prove identity, to be admissible the crimes must be so similar as to be a 'signature' of the defendant (a device so unusual or distinctive as to be like a signature). United States v. Hamilton, 684 F.2d 380, 384 (6th Cir. 1982). 'It is not necessary, however, that the crimes be identical in every detail.' Id. at 385. The probative value of the evidence must also outweigh its potential prejudicial effects. Ismail, 756 F.2d at 1259. The district court has broad discretion in balancing probative value against potential prejudicial impact. Id.
 
 
 6
 The identity of the person who robbed the Convington bank is the matter at issue in this case, and the crimes were clearly reasonably close in time. Appellant complains, though, that the crimes were not sufficiently similar for the probity of the evidence to outweigh its prejudice.
 
 
 7
 In this case, the similarities are as follows. Each robbery was committed by a well-groomed black male with short hair, between 25 and 35 years of age, about six feet tall, between 170 and 200 pounds, and well-dressed (in a business suit). In both incidents, the suspect waited in line like an ordinary customer and pretended to be carrying on bank business by presenting the teller with a check or money order. Both suspects showed or threatened the use of a handgun carried under their coats, and both demanded $50 and $100 bills.
 
 
 8
 Although neither appellant nor appellee has presented evidence on the empirical question of how commonly bank robberies are committed in the above-described manner, a comparison to other cases from our Circuit indicates that the similarity is significant enough for the purposes of Rule 404(b). In Hamilton, supra, for example, defendant was convicted of uttering altered obligations of the United States. Two counts involved paying a cashier with a one dollar bill that had the corners of twenty dollar bills pasted on it. The other count involved paying for goods with a two dollar bill that had the corners of fifty dollar bills attached. The 'other act' evidence consisted of a stipulation that defendant had uttered an altered obligation a year prior to the events for which defendant was convicted. That act involved passing a two dollar bill altered to look like a twenty dollar bill. This Court held that, even if intent was not in issue, the district court could have properly admitted the evidence to prove identity.
 
 
 9
 In United States v. Woods, 613 F.2d 629 (6th Cir.), cert. denied, 446 U.S. 920 (1980), defendants were convicted of armed bank robbery. The 'other act' was the robbery of a different bank. The robbery for which defendants were convicted was committed by three men wearing ski masks, goggles and jump suits, and they used a stolen vehicle to get to and from the place of robbery. The 'other act' was identical in those respects, except it was committed by four men. This Court found the pattern unusual and distinctive and held the evidence admissible.
 
 
 10
 In United States v. Dossey, 558 F.2d 1336 (8th Cir. 1977), defendant was convicted of bank robbery. The teller described the robber as blond, about 22 or 23 years of age, between 115 and 120 pounds, and about 5'3" tall. She wore a blue plaid shirt, blue jeans and rose-colored wire-framed glasses. Testimony placed defendant and James Weaver together in the same city as the robbery on that day. The 'other act' evidence consisted of testimony by a woman who said she, defendant, Weaver, and others robbed a bank in Arizona and that defendant was wearing a blond wig, a blue t-shirt and pinkish-tinted, wire-framed glasses. The Arizona robbery occurred a few months after the robbery for which defendant was eventually convicted. The court found the similarity in modus operandi and disguise great, and upheld the admissibility of the evidence.
 
 
 11
 As noted above, this Court must give great deference to the District Court's conclusion that the prejudicial impact of the 'other crimes' evidence was outweighed by its probative value. We take special note of the careful manner in which Judge William O. Bertelsman approached the introduction of this evidence. On the probity side, he waited until after the defense had presented its evidence so that he could determine the government's true level of need for the evidence. At that point, he decided that the government needed the evidence because of the testimony of an expert witness for the defense on the general unreliability of eye-witness testimony. As for the prejudicial effects, Judge Bertelsman admonished and instructed the jury on the permissible uses of the evidence and carefully limited its content and duration to avoid undue emphasis. We hold, therefore, that the District Court did not exceed the bounds of discretion in allowing proof of the Cincinnati robbery into evidence.[1]
 
 II.
 The Identifications of Appellant
 
 12
 Appellant also objects to the procedures used to obtain identifications of appellant from witnesses. The first objection relates to a photographic line up conducted approximately two weeks after the robbery. Seven witnesses, including the teller, were shown a spread of six photos. One of the photos was of appellant. Four of the witnesses picked appellant out of the six. Two could not make an identification, and one picked the wrong photo. Some or all of the four who picked appellant's picture were told by the FBI agent that they had correctly identified a suspect.[2]
 
 
 13
 The Supreme Court has held that reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Five factors (the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation) are weighed against the corrupting effect of the suggestive identification. Id.
 
 
 14
 Any suggestibility in the photographic line up in this case was minimal at most. All of the men appearing in the line up were black and close in age to each other. Although not all had short hair, four of the six did. The procedure compares favorably with those upheld by this Court in other cases. Cf. Summitt v. Bordenkircher, 608 F.2d 247, 252 (6th Cir. 1979) (admitting identification where witness was shown lightly complected suspect with two darkly complected persons; witness originally described the age of the criminal to be significantly greater than that of the suspect; and at the time of the line up witness was not completely sure that he chose the right person); United States v. Tyler, 714 F.2d 664 (6th Cir. 1983) (upholding admissibility where defendant's photo was displayed with a mug board and height chart different from the other photos); United States v. Snow, 552 F.2d 165 (6th Cir. 1977) (holding not impermissibly suggestive an array in which photos of defendant and another person were slightly different in size and pose from other photos); United States v. Ayendes, 541 F.2d 601, 605 (6th Cir. 1976) (holding not impermissibly suggestive a procedure that commingled three black and white photos with color pictures of each of the defendants). At least one of the witnesses, the teller, had a clear opportunity to view the suspect and had a high degree of attention. All of the identifications were made approximately two weeks after the robbery. Cf. Hamilton, 684 F.2d at 383 (upholding an identification made after nine days and relying on a case admitting an identification made after two months).
 
 
 15
 Finally, appellant complains about the agent informing the witnesses that they had selected the suspect. This Court has held that when the selection itself was not the product of suggestiveness, and in spite of the fact that the identification was not positive, it is not error to admit an identification that was confirmed by an agent as the suspect. United States v. Russell, 532 F.2d 1063, 1068 (6th Cir. 1976). In this case, any suggestiveness occurred after positive identifications were made, and the potential prejudicial influence on the reliability of the in-court identifications was brought out for the jury to consider.
 
 
 16
 Defendant's conviction is affirmed.
 
 
 17
 CONTIE, Circuit Judge, dissenting.
 
 
 18
 I dissent from Part I of the majority's opinion because I do not believe that the evidence of the Cincinnati robbery was admissible. In my opinion, the factors enunciated by the prosecution to show that the robberies were similar are not sufficiently unique to constitute a 'signature' of the defendant to be admissible to prove identity or modus operandi. Even if the crimes were sufficiently similar, in the context of this case the prejudicial impact of the evidence outweighed whatever probative value it may have had. Further, since I do not believe this error was harmless beyond a reasonable doubt, see United States v. Terry, 729 F.2d 1063, 1070 (6th Cir. 1984); Kotteakos v. United States, 728 U.S. 750, 764-65 (1946), I would reverse the order of the district court and remand this case for a new trial.
 
 
 
 [1]
 Appellant also complains that there was insufficient evidence linking him to the 'other act.' This Court has not chosen between a 'sufficient to support a finding' or a 'clear and convincing evidence' standard. See United States v. Dabish, 708 F.2d 240, 243 n.2 (6th Cir. 1983). We need not do so in this case either because the evidence linking appellant to the Cincinnati robbery is clear and convincing. The government called three witnesses to establish the link. First, the teller in the Cincinnati bank stated that the robber had the physical characteristics noted above, and that he approached her as a normal customer and presented a check to be cashed with $50 and $100 bills. When the teller asked him whether he had an account, he pulled out a gun and demanded all her money. The robber left behind his check which had his name and the name of another person on it. A Cincinnati police officer then testified that he developed and obtained latent finger and palm prints from the scene and from the check itself. A fingerprint expert then testified that those prints matched appellant's
 
 
 [2]
 The agent claims that he told them so because they asked if they had made the right choice