**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Victor ALEXANDER,
Defendant-Appellant.**

No. 86–3443.

United States Court of Appeals,
Fifth Circuit.

April 22, 1987.

Sheila C. Myers, New Orleans, La., for defendant-appellant.

Stephen B. Murray, Julian R. Murray, Jr., New Orleans, La., for amicus-La. Assoc. Crim. Def. Laywers.

Jan M. Mann, Peter G. Strasser, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before GARZA, WILLIAMS and GARWOOD, Circuit Judges.

**JERRE S. WILLIAMS, Circuit Judge:**

A jury found Victor Alexander, a physician, guilty of the robbery of a savings & loan institution in New Orleans' central business district. Dr. Alexander is appealing his conviction, claiming that the district court erred in excluding the testimony of two expert witness who were crucial to his defense of mistaken identity. These witnesses would have testified as to the difficulties and inaccuracies involved in comparing photographs of Dr. Alexander with pictures of the robber taken by the bank surveillance cameras. We reverse the conviction.

## I. Facts

On May 21, 1985, the Central Savings & Loan Association in downtown New Orleans was robbed of approximately $2,640. Still photographs and a videotape taken by the bank surveillance cameras revealed that the robber was a tall, heavy-set man with a large nose, dark hair, a dark beard and mustache, and an olive complexion. He was wearing dark brown slacks, a tan or beige sports coat, a tie, and very dark sunglasses.

The Federal Bureau of Investigations was in charge of the robbery investigation. F.B.I. agents showed the videotape of the robbery to three bank employees who verified that the man depicted on the tape was the same person who robbed the bank. Two days later, those same employees identified a photographic enlargement of a picture of the robber which had been taken by the still camera.

The agents also displayed throughout the central business district copies of the photographs which had been shown to the bank employees. An undisclosed person told the agents that the picture looked liked Victor Alexander, a physician who had an office in a building a few blocks from the bank. A black and white enlargement of Dr. Alexander's Louisiana driver license photograph, together with six black and white fill-in "mug shot" photos, were shown to the three bank employees who had previously seen the videotape of the robbery. Each employee independently identified Dr. Alexander from the photograph as the man who had robbed the bank.

On May 24, 1985, FBI agents arrested Dr. Alexander and took him to their headquarters for interrogation. Dr. Alexander cooperated fully, insisting that this was simply a case of mistaken identity. Significantly, no physical evidence was ever recovered connecting Dr. Alexander with the robbery. Although the FBI conducted a thorough search of Dr. Alexander's car, office, and home, they did not find any clothes matching those worn during the robbery, any sunglasses, the briefcase used in the robbery, or any of the money taken from the bank.[1] The only evidence linking Dr. Alexander to the robbery was the identification of his photo by the three bank employees.

The three bank employees who had made the photo identification testified at trial. The government also presented four acquaintances of Dr. Alexander who testified that they believed him to be the man in the robbery photos. Dr. Alexander, on the other hand, produced five witnesses who stated that he was not the person photographed by the bank surveillance cameras. The jury deliberated for more than eight hours before returning a verdict of "guilty as charged." The district court denied Dr. Alexander's motion for a new trial and sentenced him to five years imprisonment. Timely notice of appeal was filed. An amicus brief was filed on Dr. Alexander's behalf by the Louisiana Association of Criminal Defense Lawyers.

## II. Exclusion of Expert Testimony

Dr. Alexander steadfastly denied that he was the person who robbed the Central Savings & Loan Association on May 21, 1985. To support his defense of mistaken

---

1. A "bait-pack" was included in the money given to the robber. This is a pack of bills with an electronic device inside of it which, when detonated, will expel dye on the money and whatever else is in contact with the pack at the time. No dye-stained money or clothing was recovered from Dr. Alexander.

identity, Dr. Alexander intended to call as expert witnesses Dr. Marshall I. Gottsegen, an orthodontist specializing in celphalometrics,[2] and Lyndal L. Shaneyfelt, a former F.B.I. agent with expertise in photographic comparisons. Both men examined the film taken during the bank robbery and concluded that it was impossible for Dr. Alexander to be the person depicted in the photographs.

This evidence was unquestionably crucial to the successful presentation of Dr. Alexander's defense. The jury, however, was not given the opportunity to hear and evaluate the testimony of either Dr. Gottsegen or Mr. Shaneyfelt. Prior to trial, the government filed two motions in limine to prohibit the expert witnesses from testifying. After listening to the arguments of counsel for both parties, the district court granted the government's motions. The court, relying upon *United States v. Johnson,* 575 F.2d 1347 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979), determined that the jury was able to make the necessary photographic comparisons without the aid of expert witnesses. *Johnson* held that "[i]f the question is one which the layman is competent to determine for himself, the opinion is excluded; if he reasonably cannot form his own conclusion without the assistance of the expert, the testimony is admissible." *Id.* at 1361 (citation omitted).

■ A district court's decision on the admissibility of expert testimony in response to a motion in limine is reviewable under an abuse of discretion standard.

*United States v. Cronn,* 717 F.2d 164, 170 (5th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984). Because of the specific nature of the proffered testimony in this case, together with the complete lack of any evidence other than the eyewitness identification connecting Dr. Alexander to the robbery, we find that the district court's exclusion of Dr. Alexander's expert witnesses was clearly erroneous.[3]

■ Contrary to the conclusion of the district court, the jury was not as well-qualified as Dr. Gottsegen to determine whether Dr. Alexander was the man in the bank surveillance photographs. As Dr. Gottsegen said in his final report, Dr. Alexander and the bank robber possessed similar physical characteristics, and it would be easy for the jury to be misled by the superficial resemblance between the two men. Dr. Gottsegen's testimony, however, would have illustrated claimed specific differences in their facial features which were revealed as a result of his scientific analysis of the photographs.[4] It is unlikely that any of the jurors were sufficiently informed about celphalometry to undertake this type of comparison without expert assistance.

Expert testimony is commonly used to aid jurors in the visual comparison of objects. *See e.g. United States v. Ferri,* 778 F.2d 985 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986) (comparison of innersole shoe impressions); *United States v. Rose,* 731 F.2d 1337 (8th Cir.) *cert. denied,* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984) (com-

2. Celphalometry is defined as the scientific measurement of the dimensions of the head.

3. Dr. Alexander also claims that the district court's exclusion of the expert testimony denied him his constitutional right to present a full defense under the holding of *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Because the exclusion of the expert testimony in this case can be decided on narrower grounds, we pretermit the constitutional issue.

4. Dr. Gottsegen compared the profiles of Dr. Alexander and the bank robber by constructing a standard reference plane for each photograph. A standard reference plane is created by drawing a straight line from the tragion, the most

anterior point in the supratragal notch of the ear, to the tip of the nose. A mesh-type grid of a simple four-square design is then created by drawing three lines perpendicular and two lines parallel to the original line. The perpendicular lines are tangent to the back of the head, through the tragion itself and tangent to the tip of the nose. The two parallel lines are tangent to the top of the head and to the bottom of the chin. Facial landmarks and other physical features are then examined in relation to the particular quadrant of the grid in which they are located. The ratio of any portion of the face to the whole may also be determined and compared.

parison of shoe prints). Yet the features of a human face are much more complicated than the design on the soles of a pair of shoes. The information that Dr. Gottsegen obtained through his analysis of the photographs of Dr. Alexander and the robber constituted competent, relevant evidence of great assistance to the jury in reaching its decision. Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or may otherwise." Dr. Gottsegen's testimony was highly relevant and should have been admitted.

Other courts have reached similar conclusions. *United States v. Cairns,* 434 F.2d 643 (9th Cir.1970) held that the district court did not err in permitting an F.B.I. agent with expertise in photographic identification to compare a surveillance photograph of the bank robber with the photograph of the defendant and then to testify about the similarities in "the nose and mouth area, chin line, hair line, ear contours, and innerfolds of the ear, among other things." *Id.* at 644. In *United States v. Sellers,* 566 F.2d 884, 886 (4th Cir.1977), the court considered it proper to allow the defendant's expert in photographic comparison "to express his opinion between Sellers' features and those of the person in the surveillance photo."

■ We also conclude that the district court erred in barring the testimony of Mr. Shaneyfelt, the photographic comparison expert. Mr. Shaneyfelt would have presented evidence regarding the amount of distortion in the pictures taken by the bank surveillance cameras and the effect such distortion would have upon the subject of the photographs. This testimony would have aided the jury in visually comparing the photos and would not have tended just to confuse the jury, as the district court held.

Mr. Shaneyfelt also arranged for a professional photographer to take pictures of Dr. Alexander. These photos duplicated the exact distance, camera angle, and focal length of those taken at the bank. Mr. Shaneyfelt compared the two sets of photographs and concluded that it was impossible for Dr. Alexander to be the man photographed in the bank. The district court, in excluding Mr. Shaneyfelt's testimony, also prohibited Dr. Alexander from introducing in evidence the professionally posed photographs. The stated ground was that they could be misleading. The jury, therefore, was required to make a decision regarding the identification of Dr. Alexander as the bank robber without the benefit of expert assistance or even a standard basis of photographic comparison.

Other courts allow the introduction of testimony by experts in photographic comparison. *United States v. Brown,* 511 F.2d 920 (2d Cir.1975) is particularly on point. The court allowed Frederick E. Webb, an F.B.I. agent with qualifications similar to those of Mr. Shaneyfelt, to compare bank surveillance photos of the robber with known photographs of the defendant. Webb also was allowed to take new photographs of the defendant in order establish a proper basis of comparison. Brown was placed "in a position as nearly as possible identical with [the robber's] location in the bank according to the surveillance photographs that were taken...." *Id.* at 924. The court found that this was "clearly proper expert proof." *Id. See also United States v. Snow,* 552 F.2d 165, 167 (6th Cir.), *cert. denied,* 434 U.S. 970, 98 S.Ct. 519, 54 L.Ed.2d 458 (1977) (expert witness allowed to compare bank surveillance film with known photographs of the defendant).

Although we find that the district court erred in granting the motion in limine to exclude the testimony of Dr. Alexander's expert witnesses, we do not hold that such evidence will always be admissible in every case. The particular circumstances of this situation mandate that Dr. Gottsegen and Mr. Shaneyfelt be allowed to testify. The only substantial evidence connecting Dr. Alexander to the robbery was the bank employees' identification of Dr. Alexan-

der's driver's license photograph.[5] *United States v. Moore*, 786 F.2d 1308, 1313 (5th Cir.1986) recognized that "[i]n some cases, casual eyewitness testimony may make the entire difference between a finding of guilt or innocence." The entire case against Victor Alexander turned on the photographic identification, and it was clearly erroneous for the district court to exclude without good reason relevant expert testimony bearing directly on that issue.

The decision in *Moore*, holding that the district court did not err in excluding expert testimony on the reliability of eyewitness identification, is properly distinguishable from the present case. *Moore's* expert witness would have testified only about general problems with perception and memory.[6] Requiring the admission of the expert testimony proffered in *Moore* would have established a rule that experts testifying generally as to the value of eyewitness testimony would have to be allowed to testify in every case in which eyewitness testimony is relevant. This would constitute a gross overburdening of the trial process by testimony about matters which juries have always been deemed competent to evaluate. Dr. Alexander's witnesses, in stark contrast, would have dealt with the precise issue before the jury, comparison photo identification of Dr. Alexander as the bank robber. Exclusion of this type of testimony by the district court's granting of the motions in limine was an abuse of discretion.

■ Later, at the trial, the issue arose again. As part of its case-in-chief, the government introduced the testimony of four witnesses who had no connection at all with the savings and loan institution or with the robbery. They were, however, acquainted with Dr. Alexander, and they identified him as the man pictured in the bank surveillance photographs. This testimony was admitted under Rule 701 of the Federal Rules of Evidence, which provides that "[i]f a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In response, Dr. Alexander undertook by motion to have the court allow him to call Dr. Gottsegen and Mr. Shaneyfelt to rebut the lay opinion testimony of the government's witnesses. The district court again refused to permit the testimony. The result was that casual lay witness opinion testimony of photo identification on behalf of the government was admitted, but careful expert analytical photo identification on behalf of Dr. Alexander was excluded. We find that the district court's decision not to allow the expert rebuttal testimony on the very same facts in issue because "it would not be helpful to the jury" was clearly erroneous.

### III. *Trial Considerations*

Since we reverse, we also give guidance in the event of a new trial by considering Dr. Alexander's claim that he was denied his constitutionally protected rights to due process and a fair and impartial trial. His constitutional claim is grounded on several asserted erroneous rulings by the district court. We have considered Dr. Alexander's objections and find them to be without merit.

■ Dr. Alexander's first contention is that the district court erred in denying his motion to suppress the three bank employees' identification of his picture on the ground that the photographic display from which the identification was made was im-

---

**5.** A review of the record reveals that the prosecution's case against Dr. Alexander mainly consisted of an in-depth recitation of his sloppy bookkeeping procedures and his habit of visiting night clubs featuring exotic dancers.

**6.** Expert testimony on the subject of eyewitness identification may include such things as "the 'forgetting curve,' which shows that memory decreases at a geometric rather than an arith-

metic rate; the 'assimilation factor,' which indicates that witnesses sometimes incorporate inaccurate post-event information into their identifications; [and] the 'feedback factor,' which demonstrates that witnesses who discuss the case with each other may unconsciously reenforce mistaken identifications." *Moore*, 786 F.2d at 311.

permissibly suggestive. The district court concluded, however, that the eyewitnesses identified Alexander's picture in the photo spread because they independently recognized his face and features, not because the spread suggested that he be chosen. The court did not err in reaching this decision. *See United States v. Duckett,* 583 F.2d 1309, 1313 (5th Cir.1978) (a "trial court's finding of fact on a motion to suppress must be accepted unless clearly erroneous.").

 Dr. Alexander next contends that the district court committed reversible error in refusing to question jurors on voir dire about the defense of mistaken identity and about the possibility of F.B.I. error. The district court, however, did not abuse its discretion since the proposed questions were sufficiently related to other areas of inquiry which were addressed by the court. *See United States v. Delval,* 600 F.2d 1098, 1102–03 (5th Cir.1979) (a district court's decision not to ask specific voir dire questions proposed by the defendant will not be overturned if the overall examination was sufficient to protect the defendant's rights).

Dr. Alexander also claims the district court erred in limiting all evidence of appellant's financial condition to five months prior to the robbery. The record, however, indicates that Dr. Alexander had full opportunity to rebut all the government's allegations of monetary motive arising in that reasonable five month period. He made no showing that the five month limitation upon financial inquiry was prejudicial to him. The district court, therefore, did not abuse its discretion in excluding appellant's proffered financial testimony relating to earlier times.

The final contention raised by Dr. Alexander is that the district court abused its discretion by not granting appellant's motion for new trial on the ground that the government suppressed evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The record indicates that this claim is unfounded.

## IV. *Conclusion*

The district court abused its discretion in excluding the testimony of Dr. Gottsegen and Mr. Shaneyfelt, appellant's expert witnesses. For that reason, the conviction of Dr. Alexander is

REVERSED.